**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| **CYNTHIA J. ELROD,** | ) | **Civil Action No.:** |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **DEPARTMENT OF THE NAVY;** | ) | |
| **NAVY HEALTH CLINIC CHARLESTON;** | ) | |
| **P3S CORPORATION; TCMC; AND** | ) | |
| **CLINTON W. KNIGHT, CLAYTON** | ) | |
| **WILLIAMS, TROY MILLER AND** | ) | |
| **TOMMY DUONG, IN THEIR INDIVIDUAL** | ) | |
| **CAPACITIES,** | ) | |
| **DEFENDANTS** | ) | |
| | ) | |

**COMPLAINT**

(Jury Trial Demanded)

Plaintiff Cynthia J. Elrod ("Elrod"), complaining of the above-named Defendants, would respectfully show to this Honorable Court the following:

### I.     PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Cynthia J. Elrod ("Elrod") is an individual and female citizen and a resident of Summerville, in Charleston County, State of South Carolina, and at all times pertinent to this Complaint, worked in the Information Management Department ("IMD") of the Naval Health Clinic Charleston ("NHCC"), and was an employee of the P3S Corporation ("P3S") from on or about April 1, 2012 through on or about March 31, 2015.

2.     Defendant Department of the Navy ("Navy") is an agency of the federal government of the United States of America, and operates the Naval Health Clinic of Charleston located at 110 NNPTC Circle in the town of Goose Creek in Berkeley County, State of South Carolina.

3. That the Defendant Navy Health Clinic Charleston (NHCC) is an agency of the Department of the Navy and offers ambulatory medical services and pharmacy for active duty service members, their family members, retirees and veterans at the Goose Creek Location, located at 110 NNPTC Circle, Goose Creek, SC 29445.

4. Upon information and belief, at all times pertinent to this Complaint TCMC, LLC ("TCMC") has been a limited liability company created and operating under the laws of the State of South Carolina; provided services to the federal government including at the NHCC; and employed Plaintiff Elrod.

5. The Defendant P3S Corporation (P3S), upon information and belief, at all times pertinent to this Complaint has been a corporation created and operating under the laws of the State of South Carolina, providing services to the federal government of the United States of America, including at the NHCC, located in Berkeley County, State of South Carolina, and received federal funding to provide such services at all times relevant hereto, including from on or about April 1, 2012 through on or about March 31, 2015, the entire time that the Plaintiff was employed by the P3S Corporation.

6. Defendant Clinton W. Knight ("Bo" or "Knight") was, at all times pertinent to this Complaint, head of the Information Management Department and Chief Information Officer ("CIO") at NHCC, where the Plaintiff worked in the "IMD"; and has been a civilian employee of the Department of Defense of the United States Government and upon information and belief is a citizen and a resident of Charleston County, in the State of South Carolina.

7. Defendant Clayton Williams ("Williams") was, at all times relevant to this Complaint, a Project Manager for the employees of the Information Management Department at NHCC including the Plaintiff from April 1, 2012 through on or about March 31, 2015, was a supervising employee of the P3S Corporation for the contracts between the Navy and one or more private companies, and the Supervisor of the Plaintiff in the "IMD", and had the responsibility to manage the private contractors in the "IMD" at the "NHCC", and had the capacity in the course of his employment with P3S to report to the corporate office of the P3S about the teams and conditions of employment at the "NHCC", including that of the Plaintiff at all times pertinent hereto; and is a citizen and a

resident of Charleston County, South Carolina within the geographic physical area of the Charleston Division of the United States District Court of South Carolina, and was a final decision maker as to working conditions in the IMD at the NHCC and his supervisor at the NHCC during all time relevant in this Complaint.

8.      Defendant Troy Miller ("Miller") is an individual and upon information and belief is a citizen and resident of N. Charleston, Charleston County, State of South Carolina, residing within the geographic physical area of the Charleston Division of the United States District Court of South Carolina, and was at all times pertinent to this Complaint, a Computer Analyst working as an employee of the Navy and of the NHCC in the same Department as the Plaintiff; and was an individual who the Defendant Knight and Defendant Williams had the authority to manage and supervise over how he interacted and affected the work environment of the other individuals working in the IMD, including the Plaintiff; and was allowed and permitted to act in effect as a supervisor of the Plaintiff by the actions and inactions of the Defendant Knight and Defendant Williams .

9.      Defendant Tommy Duong ("Duong") is an individual and citizen of Summerville, State of South Carolina, residing within the geographic area of the Charleston Division of the United States District Court of South Carolina, and at all times pertinent to this Complaint, worked at the NHCC in the same IMD Department as the Plaintiff as an IA Network Security Administrator working as an employee of the Navy and was subject to the supervision and control of the Defendants Knight and Williams with regard to how they interacted with and affected the work environment of the Plaintiff.

10.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 1343 because this action is based on Title VII of the Civil Rights Act of 1964 and it's regulation,  42 U.S.C. §§ 1983, 2000d et seq., and 2000e et seq. and the Fourteenth Amendment (14th) to the Constitution of the United States of America.

11.     That venue is proper in this Court as all the actions that gave rise to the causes of action alleged in this Complaint occurred within the geographic confines of

the Charleston Division of the United States District Court of South Carolina, all of the individual Defendants reside within the Charleston Division of the United States District Court or operated as a business within the Charleston Division of the United States District Court.

## II.   FACTS

12. Beginning in November, 2006, Plaintiff Elrod worked as a Senior Inventory Manager at the NHCC as an employee of General Dynamics Information Technology ("GDIT"), which had a contract ("contract") with the Department of the Navy to perform internet support services at the NHCC. Plaintiff's duties as Senior Inventory Manager included keeping track of equipment, inventory, procurement, logistics, supply chain, budget and annual maintenance contracts at the NHCC.

13. Beginning in April, 2009, Defendant TCMC took over the above-described contract between GDIT and the Navy, with the result that as an employee of TCMC (a) Plaintiff continued as a Senior Inventory Manager performing the identical duties at the NHCC that she had performed as an employee of GDIT. During the term of this contract between TCMC and the Navy Defendant Williams was the project manager responsible for proper implementation of the contract as well as a part owner, along with his wife, of this contract and of TCMC.

14. Beginning in April 2012 and at all times relevant hereto until March 31, 2015, Defendant P3S Corp took over the above-described contract between TCMC and the Navy, with the result that as an employee of P3S Corp (a) Plaintiff continued performing the identical above-described duties at the NHCC that she had performed as an employee of TCMC but with the new title of Quality Assurance Property Manager, (b) Defendant Williams continued as the project manager of the contract as well as part owner of this contract and of TCMC; and (c) TCMC served as a subcontractor of P3S performing services for the above-referenced contract between P3S and the Navy.

15. At all times relevant to this Complaint Defendants Navy and NHCC were responsible for supervising and controlling the actions of GDIT, TCMC, P3S, Defendants Knight, Williams, Miller and Duong to, *inter alia*, ensure that each of them complied

with all applicable laws and contract provisions when implementing the contract(s) between the Navy and GDIT, TCMC, P3S respectively.

16. On several occasions while Plaintiff Elrod was an employee of GDIT, TCMC and P3S at the NHCC Plaintiff repeatedly was a victim of sexual harassment and discrimination, retaliation, threats, intimidation and a hostile work environment caused and allowed by Defendants' Navy, NHCC, GDIT, TCMC, P3S, Defendant Knight, and Defendant Williams

17. Defendant Tommy Duong ("Duong"), a married co-worker at the office next to Plaintiff's office, repeatedly asked Plaintiff to have lunch with him 2-3 times a week. Plaintiff refused all of these requests. After a few months of nonstop requests by Defendant Duong for a lunch date with the Plaintiff which the Plaintiff refused, Defendant Duong expressed anger and hostility toward her for rejecting his requests. His constant invitations and her repeated refusals became an ongoing joke in Plaintiff's Department. Defendant Duong repeatedly tried to force Plaintiff into his life even though she had told him to stay away from her and to leave her alone. Defendant Duong frequently logged onto Plaintiff's government computer during working hours without her permission and without notifying her in advance as required by law, and downloaded updates to her system that resulted in a hard drive crash. Defendant Duong was caught watching pornography at work on a government computer, which is cause for immediate dismissal but he continued to be employed by the Navy. Another woman employee of the Navy and HNCC filed an informal complaint to get him to stop his unwanted attention to her. Duong was not held to the same standards of responsibility as the rest of the IMD staff and has been the object of numerous complaints about him by the IMD staff and the rest of NHCC, but was continuously allowed to continue to harass and intimidate the Plaintiff during the time period of November 2006 through March 31, 2015.

18. Plaintiff frequently was required at her workplace at the NHCC to hear sexual comments, jokes, and innuendos, and she was subjected to pornography on a computer or on the TV in Plaintiff's workplace that was located in a position that it would be impossible not to see . Plaintiff complained to her superiors that she found

these actions offensive to her, but sexually harassing and lewd behavior continued in the presence of the Plaintiff and was treated as a joke since Plaintiff's fellow employees and supervisors knew they would not be fired or disciplined for engaging in this behavior, including the time period of April 1, 2012 through March 31, 2015.

19.     Defendant Troy Miller used threats and intimidation daily toward the Plaintiff in the Plaintiff's work place, after the Plaintiff rejected the Defendant Troy's interest in her and even though numerous complaints were made to Defendants Williams and Defendant Clayton Knight about that behavior, including by the Plaintiff, Defendant Miller was never written up or disciplined.  Plaintiff requested that Defendant Miller be written up or disciplined for his abusive behavior toward her, but that request was denied by Defendant Williams.  Defendant Miller in effect allowed by the Defendants Clinton Knight and Defendant Bo Williams to effectively supervise the Plaintiff and harass her even though numerous complaints had been made against him by the Plaintiff and was given numerous benefits not given to the Plaintiff and others similarly situated, including the time period from April 1, 2012 through March 31, 2015.

20.     For the employees of the subcontracting company Defendant TCMC there was no employee handbook and/or written policy to follow. Rules were made up ad hoc by the Defendants and each of them and were applied differently for different people. Policies/rules that apply to the employees covered under the main contracting company did not apply to the sub-contractor within the same department. This set up a sub-class of people working together but under different rules..

21.      That at all times relevant to the time pertinent to this Complaint, Defendant Miller invaded Plaintiff's personal space and yelled in her face in an intimating manner, subsequent to the Plaintiff refusal to respond to this interest in her. The Plaintiff frequently complained to the Defendant William and Defendant Knight about this, but no action of any kind was taken to stop this action.  Defendant Miller's office was put next to Plaintiff's office knowing that would make Plaintiff feel intimidated and harassed.  When Plaintiff voiced her concerns to Defendant Knight and Defendant Williams, she was told "if you don't like it there is the door and be sure to give us two weeks notice.".  Plaintiff complained several times to Defendant Williams

about her being singled out by Defendant Miller, having rules applied differently to Plaintiff, and being watched and having Plaintiff's every move at the NHCC monitored. Plaintiff's personal cell phone was used repeatedly to locate and contact her for business purposes even though Plaintiff requested it not be. Other women that fell under the analyst's supervision also complained about Defendant Miller's misogynistic attitude and actions toward them.

22.   When Plaintiff tried to engage Defendant Knight, her Department head, in discussions concerning how she felt sexually harassed and intimidated because she was a woman, he was dismissive and uninterested in anything she had to say; and repeatedly turned his back to her, waved her away and said "ok" when she was in the middle of a sentence. When Defendant Knight wanted the Plaintiff to perform tasks, he never spoke with her directly but had someone else speak with her instead. Defendant Knight repeatedly made threats to the Plaintiff by proxies, who delivered messages threatening retaliation against her for reporting wrong doings, and actions of discipline were delivered to her by their envoys. Decisions about equipment and deployment that should have been made by the Plaintiff, or at the very least have included the Plaintiff in the decision making process, were made by male members of the department without Plaintiff's input, and Plaintiff repeatedly was notified after the fact on how something would be done. Plaintiff was not asked by Defendants Clinton Knight and Bo Williams for her input or ideas concerning her areas of expertise. .

23.   On numerous occasions throughout the time period relevant to this Complaint, Plaintiff Elrod voiced complaints to Defendants Knight and Williams about their discriminatory, unfair and hostile conduct toward her.   In response, Defendant Knight threatened that she would lose her job if she did not stop making accusations and told her that she would "never work in this Town" again if she even thought of suing them. Plaintiff stopped complaining because of those threats and because neither Defendant Bo Williams nor Defendant Knight would take her complaints seriously. They labeled her as "whiny," "bitchy," and a complainer. They did not investigate and did nothing to remedy any of her complaints.  The Defendants Williams and Defendant Knight blamed the Plaintiff, saying she was too sensitive and that people only harassed

the Plaintiff because they knew it irritated her and that the Plaintiff should not let the harassment bother her. Instead of following up with the Plaintiff, or asking if anything had changed or gotten better, Defendant Williams, the project manager, asked other people in the department if Plaintiff still was "bitching and complaining."  The Plaintiff and her concerns were dismissed, ridiculed and treated like a joke, and Plaintiff's efforts to perform her job duties to the best of her abilities were thwarted and undermined in Retaliation for her complaining about her disparate treatment.

24.    When Plaintiff asked the Navy to remedy the unlawful actions of the Defendants regarding her, Plaintiff was directed to speak with LTJG Seals, a Naval officer who was the Command Equal Opportunity Officer ("CMEO") for the NHCC. LTJG Seals spoke to Plaintiff in an aggressive and hostile tone, and told the Plaintiff that LTJG Seals had investigated the Plaintiff's grievances and had heard some very disturbing things about the Plaintiff.   LTJG Seals did not reveal the nature of what she had heard about the Plaintiff and gave the Plaintiff no opportunity to respond. Thus, LTJG's investigation of Plaintiff's complaints without giving the Plaintiff notice and an opportunity to explain was defective, discriminatory and unfair to the Plaintiff.

25.    LTJG Seals initially told the Plaintiff that she could not file a complaint with the Navy because the Plaintiff was a contractor and, therefore, Plaintiff could file a complaint only with the Human Resources department of the company for which the Plaintiff worked. Later LTJG Seals asked the Plaintiff if her complaints were sexual in nature or concerned harassment, which they obviously were, and Plaintiff replied they were both. In response LTJG Seals told Plaintiff that the Plaintiff immediately must file a written statement explaining details about her complaints and against whom she was making the complaints, and if she provided that statement that the Navy Commanding Officer and the persons whom she would identify in her statement as having abused her immediately would be notified that a complaint was being filed against them by the Plaintiff.  Plaintiff informed LTJG Seals that the Plaintiff wanted only to complete and file with the Navy a complaint form and not a detailed statement at that time, and feared Plaintiff would receive retaliation if information about her complaint immediately was provided to those against whom she was complaining, some of whom were her

8

supervisors or co-workers. LTJG Seals continued to insist aggressively that the Plaintiff write a statement immediately in LTGJ Seals presence stating details about her complaints, and the Plaintiff repeatedly expressed that she was not comfortable with the pressure being applied to her by LTJG Seals and did not want to submit a detailed statement at that meeting and without the benefit of advice of an attorney. In response, LTJG Seals pressed Plaintiff harder, stating that Plaintiff would have to make a detailed statement at that time and that LTJG Seals would need to brief the Commanding Officer about the content of her allegations. Plaintiff expressed concern that any statement by the Plaintiff would not be confidential and would result in retaliation against her and that LTJG Seal's pressure was making the Plaintiff uncomfortable; and began to cry. In response, LTJG Seal gave the Plaintiff tissues to wipe her tears and a pen, and told Plaintiff to begin writing her statement. At that point Plaintiff left the presence of LTJG Seals, who never followed up with the Plaintiff, asked the Plaintiff if she was okay or sent or gave Plaintiff the forms Plaintiff had requested so the Plaintiff could file a complaint. LTJG Seal interrogated and intimidated the Plaintiff so that the Plaintiff felt like she was a criminal.

26.     Defendant Williams and Defendant Knight ignored and dismissed Plaintiff's multiple complaints about her and others being exposed involuntarily to pornographic and other inappropriate videos shown in the department, and sometimes dismissively responded to those complaints by saying "boys will be boys."

27     On March 31, 2015, Defendant Tommy Duong, made an unsolicited telephone call to the Plaintiff in which he told her that he was going to miss watching the Plaintiff

28.     The Plaintiff repeatedly complained to Defendant Williams in his capacity as Project Manager for the Defendant P3S during the time period April 1, 2013 through March 31, 2015 that she was having anxiety attacks because of the harassment of her by the Defendant Miller, who was obsessed with her and had done whatever he could to undermine her authority and to threaten her. Defendant Williams again responded that that was just Defendant Miller's management style and she would have to get used to it. Plaintiff complained to Defendant Williams that Defendant Miller's treatment of her

created a hostile work environment that Defendant Williams was allowing and helping to occur, and that the Plaintiff should not have to "get used to it." Defendant Williams repeatedly responded to these Complaints by the Plaintiff that she should not let Troy Miller's conduct bother her; that he harasses her only because he knows it bothers her; and that if she ceased letting it bother her, he would cease harassing her. Plaintiff objected that this advice to her by Defendant Williams was his blaming her, the victim, for being victimized, to which Defendant Williams repeated that she was too sensitive and that she should just ignore what Defendant Miller said and did. This hostile and harassing treatment of the Plaintiff by Defendant Miller and Defendant Williams was ongoing and pervasive during the entire time Plaintiff worked at the NHCC. When the Plaintiff reported issues to management it became a running joke among the workers in her department, including laughing about how the director of Plaintiff's department, LCDR Morrison, kissed her in front of several witnesses after his going away speech; Defendant Duong kept repeatedly asking her to go out to lunch with him despite the Plaintiff having told Duong that she was not interested and to stop asking her to do so. This harassment of the Plaintiff emotionally, physically and mentally exhausted the Plaintiff and adversely affected every aspect of her life including her mental health.

29. The Plaintiff repeatedly told Defendant Williams and Defendant Knight that the harassing and abusive conduct toward her was illegal and improper; that just because she is upset about that improper conduct does not justify, excuse or condone that behavior; that the continued and pervasive behavior about which she complained constituted a hostile work environment and that it was their job/responsibility to make it stop; that because they did not treat her complaints seriously but treated them like a joke and a nuisance and that the abusive behavior toward the Plaintiff was allowed to continue to the point of making the Plaintiff ill, causing her to miss work and adversely affecting my health and mental wellbeing. In response, Defendant Williams laughed at the Plaintiff and said "you are just too sensitive, boys will be boys so get over it." The Plaintiff complained to Defendant Williams that he complaints were not being taken and responded to seriously, and that because she had made complaints about abusive, discriminatory and harassing behavior toward her that he would not stop, workers in her

NHCC department ridiculed and labeled her "a whiney bitch," a "complainer about nothing" and other words to that effect. Further, Defendant Knight and Defendant Williams repeatedly threatened the Plaintiff with dismissal from her employment if she made her complaints to anyone other than them.

30. Defendant Williams, in his capacity as Project Manager for the employees of the IMD at NHCC, and as the supervising employee and final decision maker of P3S Corporation, and as part owner of the Defendant TCMC, and Defendant Knight in his capacity as head of the IMD and CIO of the NHCC, allowed Defendant Troy Miller and Defendant Tom Duong to continue to sexually harass and discriminate against the Plaintiff, and created both a sexually hostile working environment for the Plaintiff, altering the terms and conditions for her employment in a pervasive and humiliating manner to the point where she suffered anxiety and stress and had to seek medical attention.

31. That the Defendant Knight by not adequately punishing male employees for watching porn during work hours at the NHCC, and by allowing Defendant Duong to continue to harass the Plaintiff, facilitated and made possible a sexually hostile work environment for the Plaintiff to work in the IMD at the NHCC.

### III. CAUSES OF ACTION

**FOR A FIRST CAUSE OF ACTION**
**(Violation of Civil Rights – Title VII of the Civil Rights Act of 1964**
**and it's regulation including 42 U.S.C. § 1981 )**

32. The Plaintiff repeats and restates the preceding paragraphs as if fully restated herein.

33. The Defendants Department of the Navy, P3S, TCMC, and each of them discriminated against the Plaintiff and interfered with her right to contract for employment on the basis of Plaintiff's gender, in violation of 42 U.S.C. § 1981, by, *inter alia,* subjecting the Plaintiff to a sexually hostile work environment and failing to provide adequate supervision and training to Plaintiff's supervisors and co-workers who unlawfully discriminated against her.

34. As a direct and proximate cause of the Defendants' and each of them, unlawful actions and omissions referenced herein, the Plaintiff has been damaged, and continue suffer emotional distress, anxiety, depression, extreme stress and humiliation, medical expenses and a change in personality.

35. The actions and omissions of the Defendants and each of them referenced above were willful, malicious and reckless and were done with reckless indifference and disregard of the Plaintiff's federally protected rights to have her work environment being free of sexual hostility, pressure, discrimination and disparate treatment as a woman. Plaintiff is entitled to actual, consequential, compensatory damages from all Defendants, and each of them, as well as reasonable attorney fees and costs, under 42 U.S.C. § 1981 against all of the Defendants, and each of them, as well as punitive damages against the Defendant Knight, Defendant Williams, Defendant Duong, Defendant Miller, Defendant P3S Corp and Defendant TCMC .

**FOR A SECOND CAUSE OF ACTION**
**(Violation of Civil Rights – Title VII of the Civil Rights Act of 1964**
**and it's regulation including 42 U.S.C. § 1983 )**

36. The Plaintiff repeats and restates the preceding paragraphs as if fully restated herein.

37. The actions of Defendants Knight, Williams were as final decision makers who had substantial control over the discipline, actions, behavior and monitoring of employees under their control and of the work environment of the Plaintiff and the condition of the Plaintiff's employment, at all times relevant hereto.  Therefore, the actions of Defendants Knight and Defendant Williams are those of Defendants Navy, NHCC, P3S Corporation and TCMC; and the actions of Defendants P3S Corporation and TCMC are those of Defendants Navy and NHCC.

38. As a direct and proximate cause of Defendants', and each one of them, unlawful actions and omissions referenced herein, the Plaintiff has been damaged, and will continue to suffer emotional distress, anxiety, depression, extreme stress and humiliation and medical expenses and a change in personality.

39. The actions and omissions of the Defendants and each of them referenced herein were willful, malicious and reckless and were done with reckless indifference and disregard of the Plaintiff's federally protected rights to have her work environment being free of sexual hostility, pressure and discrimination. Plaintiff is entitled to actual, consequential, compensatory and punitive damages against Defendant Knight, Defendant Williams, Defendant Miller, Defendant Duong, Defendant P3S Corp and Defendant TCMC, as well as reasonable attorney fees and actual costs, under 42 U.S.C. § 1983 against all of the Defendants, and each of them, as well as punitive damages against Defendant Williams, Defendant Knight, Defendant Miller, Defendant Duong, Defendant P3S and Defendant TCMC.

### FOR A THIRD CAUSE OF ACTION
### (Violation of the Fourteen Amendment of the
### Constitution of the United States)

40. The Plaintiff repeats and restates the preceding paragraphs as if fully restated herein.

41. That the 14th Amendment of The Constitution of the United States specifically guarantees that no citizen of the United States shall be denied the equal protection of the laws.

42. That as above stated the Plaintiff was denied the equal protection of the laws on the basis of her gender because of the actions and /or inactions of the Defendants, and each of them, as above described.

43. That as a direct result of being denied the equal protection of the law of the United States as above described the Plaintiff suffered emotional distress, anxiety, depression, humiliation, medical expenses and a change in personality.

44. That the actions and/or inactions of the Defendants, and each of them, as above described were done with reckless indifference and disregard to the Plaintiff. The 14th Amendment guarantees equal protection of the law, and the Plaintiff is entitled to actual, compensatory damages from all of the Defendants, and each of them, as well as reasonable attorney fees and costs, as well as punitive damages against Defendant

Williams, Defendant Knight, Defendant Miller, Defendant Duong, Defendant P3S Corp and Defendant TCMC .

## FOR A FOURTH CAUSE OF ACTION
## RETALIATION
### (Violation of Civil Rights – Title VII of the Civil Rights Act of 1964 and it's regulation)

45.     The Plaintiff repeats and restates the preceding paragraphs as if fully restated herein.

46.     That the Defendants and each of them, Retaliated against the Plaintiff for complaining about the sexually hostile work environment she felt subjected to, by forcing her to continue working in such an environment and by threatening her if she continued to complain, as above stated.

47.     That as a direct result of the Retaliation by the Defendants, and each of them, as above stated the Plaintiff suffered anxiety, stress, depression, humiliation, medical expenses, and a change in personality.

48.     That the action and/or inaction of the Defendants, and each of them, as above referenced, was in Retaliation against the Plaintiff for complaining about her right to be free from a sexual hostile work environment and the Plaintiff is entitled to actual, compensatory damages against all the Defendants, and each of them, as well as  well as reasonable attorney fees and costs, as well as punitive damages against Defendant Williams, Defendant Knight, Defendant Miller, Defendant Duong, Defendant P3S Corp. and Defendant TCMC..

49.     The Retaliation by the Defendants, and each of them, against the Plaintiff for opposing unlawful employment protection violated the protection against such retaliation in Violation of Civil Rights – Title VII of the Civil Rights Act of 1964 and it's regulation)

WHEREFORE, having fully set forth his allegations against Defendants and each of them, Plaintiff respectfully requests the following relief:

1. Compensatory damages against all of the Defendants and each of them for anxiety, stress, depression, medical expenses and change in personality and enjoyment of life directly and proximately caused by the Defendants' unlawful conduct;

2. Punitive damages against the Defendant Williams, Defendant Knight, Defendant Miller, Defendant Duong , Defendant P3S and Defendant TCMC.

3. Attorney's fees, expert fees, and costs; and

4. Such further relief as the Court deems just and appropriate.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL,

Respectfully submitted,

―――――――――――――――――――

By:/s/Lawrence C. Kobrovsky, ESQ
Law Office of Lawrence C. Kobrovsky
Federal ID Number:  5294
PO Box 1726
Charleston, SC 29402-1726
Telephone:  843-853-3703
Facsimile:  843-853-2331
kobrovskyl@bellsouth.net

ATTORNEY FOR PLAINTIFF

―――――――――――――――――――――

By:/s/Michael T. Rose, Esquire
Federal ID Number: 5267
MIKE ROSE LAW FIRM, PC
409 Central Ave.
Summerville, SC 29483
Phone: 843-871-1821
Facsimile: 843-478-7595
mrose5@sc.rr.com

CO-COUNSEL FOR PLAINTIFF

Dated :  __25__ Oct., 2016

SOUTH CAROLINA